## VOLLMER v. COENIS.

1. APPEAL AND ERROR—PLEADING—ADDITIONAL DEFENSES—PAYMENT.
   In second mortgagee's action on mortgage note under record
   showing that order, granting leave to file supplemental answer
   wherein defense of payment was pleaded, was approved as to
   form by plaintiff's attorney but·not signed by trial· judge,
   and that the case was tried as if the order had been made,
   Supreme Court will consider the case as though order had been
   made (Court Rule No. 72 [1933]).

2. MORTGAGES—MERGER WITH FEE.
   As a rule the merging of a mortgage and fee estate extinguishes
   the mortgage.

3. SAME—MERGER WITH FEE—EVIDENCE.
   Generally a person cannot remain a mortgagee of lands after ac-
   quiring the fee estate in the absence of a showing that the
   mortgage was to be kept alive to protect the rights thereunder
   against the claims of others.

4. SAME—MERGER WITH FEE—PAROL EVIDENCE.
   Parol testimony is admissible not only to show that a deed was
   given as a mortgage instead of to pass title immediately but
   also to show that a deed was intended for the purpose of pass-
   ing title and not to have the effect of a mortgage.

5. APPEAL AND ERROR—NONJURY TRIAL—EVIDENCE—NEW TRIAL.
   Upon trial of case without a jury where trial judge excluded
   evidence which was admissible upon defense of payment of
   note sued upon, a new trial is granted since plaintiff may not
   have deemed it necessary to present further testimony in view
   of trial court's ruling.

Appeal from Saginaw; Sample (George W.), J.,
presiding. Submitted June 6, 1944. (Docket No.
10, Calendar No. 42,721.) Decided September 11,
1944.

Parol evidence rule—general treatment, see 1 Restatement, Con-
tracts, §§ 237–244.

Assumpsit by Arthur Vollmer against John Coenis and wife on a promissory note. Judgment for plaintiff. Defendants appeal. Reversed and new trial granted.

*Floyd T. Fuss,* for plaintiff.

*Arthur J. Slaggert (Ryan, Doozan & Scorsone,* of counsel), for defendants.

Butzel, J. Defendant John Coenis purchased lot 3 of block 2, Warren's Addition, Bay City, Michigan, and received a deed therefor. He also purchased on land contract lots 1, 2, 4, 5 and 6 of block 2 of the same subdivision. This property is located just within the corporate limits of Bay City and fronts on a four-lane highway leading to Saginaw.

Plaintiff Vollmer was employed by Coenis to build a large brick restaurant on lot 3 and to make other improvements including the erection of a garage and the moving of a barbecue stand from Saginaw and placing it on one of the other lots, all for a consideration of $16,400, part of which was paid in cash on hand and part with the proceeds of a mortgage of $9,000 given to the Peoples' American State Bank. Defendants gave plaintiff a note and a mortgage on lot 3 heretofore described for $3,239, the balance unpaid. Defendants owed other amounts, including sums due for fixtures being purchased on title-retention contract. They also were indebted for lumber to the Bressler Lumber Company, of which plaintiff was president. A large sum was also due from them to an ice cream company. Because of their inability to keep up the payments, defendants as first parties on the 20th of November, 1934, entered into an agreement with plaintiff as second party and the ice cream company as third

party in which it is set forth that defendants are the owners of an interest in the six lots, that a building was erected on lot 3, that certain personal property was chattel-mortgaged to the ice cream company and to a soda fountain company, and that certain debts were owing to the various parties including the Bressler Lumber Company. It provided for monthly payments to be made by defendants to the various creditors including the mortgagee bank. Specific amounts were set for each month's payment to the various creditors. The agreement further provided that:

"To secure the faithful performance of the payments above specified, said first parties have this day drafted and executed to Arthur Vollmer a quitclaim deed of the property above described, which deed has been placed in escrow with Henry T. Robinson, and the said first parties hereby agree with the said Arthur Vollmer and other parties to this transaction that should they fail to make the monthly payments above specified, then the said Arthur Vollmer may make proof of such failure to the said Henry T. Robinson and the said Henry T. Robinson shall forthwith deliver said quitclaim deed to said Arthur Vollmer and the said Arthur Vollmer shall own said property free and clear of claims of said first parties, and said first parties expressly waive all benefit of any laws or statutes, and hereby acknowledge that the said Arthur Vollmer shall own said property free and clear of any claim on their part upon their default.

"In consideration of the posting of the deed and the payments to be made by first parties, said M & B Ice Cream Company, for itself and as agent for the Knight Soda Fountain Company, agrees to withhold foreclosure of its chattel mortgage. It is also understood and agreed that People's American State Bank, while not binding itself in any way or in any

way agreeing not to foreclose, will be satisfied with its payment.

"It is further agreed on the part of Arthur Vollmer that in consideration of the payments made to him, he will withhold foreclosure on his second mortgage, and will likewise withhold the foreclosing of the land contract held by the Bressler Lumber Company."

The agreement further provided that the creditors might audit defendants' books, and the latter agreed not to further incumber the property nor to execute a transfer without applying the full consideration therefrom to the debts. In the event the business should make larger sums than contemplated, the parties agreed to prorate the increase among the creditors. This agreement was to extend for a period of two years except on default of defendants. It further stated that failure to make payments constituted grounds for plaintiff to take over the property and receive delivery of the deed from the escrow agent, as stated in the quoted paragraph. A quitclaim deed running to plaintiff was duly executed and deposited with the escrow agent, Henry T. Robinson, who was an officer of the mortgagee bank. Defendants failed to keep up the payments and thereupon the deed to plaintiff was recorded and he took over the property. Plaintiff thus not only became the title owner to the property, on which he had a second mortgage, but the record discloses that he took possession of the property and rented it to others. While the record is not at all clear, it indicates that the bank foreclosed its mortgage and the parties having liens repossessed themselves of the personal property.

Plaintiff brought the instant suit on his second mortgage note. Defendants claim that the deed to plaintiff operated as a merger of the second mort-

gage with the fee estate and not only disposed of the second mortgage lien but also satisfied the mortgage debt in accordance with the understanding at the time the papers were executed.

Plaintiff complains of the fact that defendants did not clearly give notice in their first plea of the defense of payment by the giving of the deed. The supplemental answer, filed almost two years before the case was heard, undoubtedly supplied this deficiency. The order granting leave to file a supplemental answer was never signed by the circuit judge, because, it is claimed, of the judge's illness and his subsequent death. However, it was approved in form by the attorney for plaintiff. The case was tried as if this order had been made and we will so consider it (3 Comp. Laws 1929, § 14149 [Stat. Ann. § 27.843]; Court Rule No. 72 [1933]).

Plaintiff's testimony was hesitant and evasive. In some manner the deed to plaintiff, which was deposited with Mr. Robinson as escrow agent, was withdrawn from him, duly recorded, and at the time of the trial was in the possession of plaintiff's attorney. The return address to which the register of deeds mailed the instrument was written in pencil on the back of the deed and, significantly, designated plaintiff's office. It was shown that the handwriting resembled that of plaintiff's daughter who looked after his office. During another phase of the trial, plaintiff admitted that he had the keys to part of the premises though at first he denied it.

Strenuous objection was made to testimony that was offered by defendants to show that plaintiff agreed to release defendants from all further liability if he became the owner of defendants' equity in the premises. The trial judge upheld the objection to this testimony upon the grounds that the written agreement was complete and unambiguous

in its terms, and that parol evidence could not be received to show the prior negotiations between the parties. Because he found nothing in the contract itself that provided for the extinguishment of the debt upon the delivery of the deed by the escrow agent, he allowed recovery on the note. The deed, however, was absolute in form. According to the written agreement, upon default plaintiff was entitled to receive from the escrow agent the deed to the property free and clear of all claims of defendants including all benefits of any laws or statutes. Was the trial judge correct in allowing recovery on the note and in excluding parol evidence explaining the contemplated effect of the deed?

As a rule the merging of a mortgage and fee estate extinguishes the mortgage. *First National Bank of Utica* v. *Ramm,* 256 Mich. 573. There is no question but at the time the deed was executed, title remained in defendants. It, however, was placed in the hands of an escrow agent who was to deliver it to plaintiff in the event of defendants' default. Immediately thereupon absolute title would vest in plaintiff. Defendants thus denied themselves the right to a moratorium, a period of redemption, et cetera. A person generally cannot remain mortgagee of lands after acquiring the fee in the absence of any showing that the mortgage was to be kept alive to protect the rights thereunder against the claims of others. *Jackson* v. *Evans,* 44 Mich. 510. The case of *Weston* v. *Livezey,* 45 Col. 142 (100 Pac. 404), is very similar to the instant one. A mortgagor placed a deed of land in escrow to secure certain payments on the mortgage. After default on these payments, the escrow agent delivered the deed to the mortgagee. Suit was brought on the original note. The court said:

"Where the mortgagee acquires the fee in the land mortgaged by conveyance from the mortgagor, the mortgage debt, so far as the mortgagee is concerned, is extinguished, unless a contrary intention is manifest."

The case is more fully briefed in 65 A. L. R. 124. The trial judge was manifestly in error in not permitting parol testimony by defendants to show that it was the intention of the parties that the delivery of the deed should extinguish the mortgage debt. There is no question but that one could show by parol that a deed was given as a mortgage instead of to pass immediate title. The converse of the rule is equally true. One can always show that a deed was intended for the purpose of passing title and not to have the effect of a mortgage.

The judge acting without a jury rendered a judgment for the full amount against defendants. The judgment should be reversed. In view of the ruling of the lower court, the plaintiff may not have deemed it necessary to present any further testimony to support his case. Under the circumstances, we believe there should be a new trial.

Judgment reversed, with costs to defendants.

NORTH, C. J., and STARR, WIEST, BUSHNELL, SHARPE, BOYLES, and Reid, JJ., concurred.