*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0003P (6th Cir.)
File Name: 02a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES LEATHER,
INC.,

   *Plaintiff-Appellee,*

   *v.*

MITCHELL MANUFACTURING
GROUP, INC., now known as
Mitchell Automotive, Inc.;
MITCHELL CORPORATION OF
OWOSSO,

   *Defendants-Appellants.*

No. 00-1689

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-71775—Victoria A. Roberts, District Judge.

Argued: November 27, 2001

Decided and Filed: January 4, 2002

Before: GUY and BOGGS, Circuit Judges; CARR, District
Judge.*

───────────────

 *The Honorable James G. Carr, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:**  Erik G. Chappell, McHUGH, DeNUNE & McCARTHY, Sylvania, Ohio, for Appellants.  James E. DeLine, KERR, RUSSELL & WEBER, Detroit, Michigan, for Appellee.  **ON BRIEF:**  Erik G. Chappell, McHUGH, DeNUNE & McCARTHY, Sylvania, Ohio, for Appellants. James E. DeLine, KERR, RUSSELL & WEBER, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

   RALPH B. GUY, JR., Circuit Judge. Defendants, Mitchell Manufacturing Group, Inc., now known as Mitchell Automotive, Inc. (Mitchell Automotive), and its parent corporation, Mitchell Corporation of Owosso (Mitchell Corp.), appeal from the district court's order granting plaintiff's motion for determination of interest in real property and denying Mitchell Corp.'s motion to set aside the garnishment of lease payments on that property.  These post-judgment motions arose out of the efforts of plaintiff, United States Leather, Inc. (USL), to enforce the judgment of over $1.5 million entered in this case against Mitchell Automotive, which owned real property and a manufacturing facility located in Clare, Michigan.  Mitchell Corp., as a secured creditor of its subsidiary, asserted that it had a superior interest in the property.

   The district court, adopting the magistrate judge's report and recommendation, found that the security interest claimed by Mitchell Corp. had been extinguished by merger of the title and mortgage when the property was reconveyed to Mitchell Automotive by deed in lieu of foreclosure.  Consequently, USL's levy on the property and its garnishment of rents were to be sustained and enforced.  Defendants argue that the

district court erred by (1) ruling that the deed merged into the mortgage; (2) failing to determine whether the levy was proper; and (3) failing to afford defendants a jury trial or evidentiary hearing pursuant to Mich. Comp. Laws Ann. § 600.6128. After review of the record and the arguments presented on appeal, we affirm.[1]

## I.

Formed in 1996 as a wholly-owned subsidiary of Mitchell Corp., Mitchell Automotive manufactured and sold leather products for use in automobile interiors. Mitchell Automotive purchased a substantial amount of finished leather from USL and, by early 1998, had built up a debt to USL of more than $1.5 million. At the same time, Mitchell Corp. had booked more than $4.5 million in inter-company loans to its subsidiary. Given its financial troubles, which it attributed to NAFTA, Mitchell Automotive found a minority-owned buyer that they hoped could secure additional automobile manufacturer contracts.

On April 22, 1998, Lamont Group, Inc., and Lamont Group Acquisition Corporation, purchased Mitchell Automotive's assets, including the Clare facility, for a total of $27.5 million. The Lamont Group paid with $6.5 million in cash and two promissory notes for the balance. To secure the notes, the Lamont Group granted Mitchell Automotive a security interest in the purchased assets and a mortgage on the Clare facility. Also, the debt owed to USL was assumed by the Lamont Group. On April 28, 1998, within days of the sale, USL filed this diversity action to recover on the debt.[2]

---

[1]At oral argument, the parties indicated that the Clare property has been sold and the proceeds are being held in escrow pending resolution of this appeal.

[2]Claims against Mitchell Corp. and William Mitchell, who was the principal shareholder, President, and Chairman of the Board of both Mitchell Corp. and Mitchell Automotive, were dismissed without

On May 27, 1998, Mitchell Automotive granted Mitchell Corp. a continuing security interest in all its personal and intangible property, including all "instruments," to secure any and all existing and future indebtedness. The security agreement was signed by Helen Malik as Secretary and Treasurer for both Mitchell Corp. and Mitchell Automotive. It is undisputed that Mitchell Corp. obtained a security interest in the Lamont Group's mortgage and promissory notes through this agreement.[3]

The Lamont Group defaulted and, on November 13, 1998, surrendered possession of all personal property that constituted collateral subject to its indebtedness to the first secured creditor. The Lamont Group also delivered to Mitchell Automotive a quitclaim deed in lieu of foreclosure for the Clare property, which stated in pertinent part:

It is [Lamont's] intent to convey and transfer absolute title to the above described premises to [Mitchell Automotive], free of any equity of redemption. It is expressly understood and agreed that the execution and delivery of this Deed shall not in any manner be deemed to be a merger with or the extinguishment of the Mortgage or constitute a reduction of the indebtedness secured thereby. The Mortgage and the entire indebtedness secured by the mortgage is and remains in full force and effect . . . provided, however, [that] the recourse obligation of [Lamont Group] . . . under that

---

prejudice in July 1998.

[3] Mitchell Corp. also asserts that a security interest was created on April 22, 1998, when it took possession of the Lamont Group's mortgage and promissory notes. To the extent that the question of whether Mitchell Corp. actually took possession of the documents at that time may have presented a disputed question of fact, it was not material to the district court's decision. Further, we need not determine whether Mitchell Automotive granted a security interest in the mortgage and notes prior to executing the written agreement on May 27, 1998.

Any person so made a party, or any party to the original proceeding, may have such issue determined by a jury upon demand therefor and payment of a jury fee as in other civil actions if such person would be entitled to a jury trial if the matter was adjudicated in a separate action.

We need not decide whether the defendants would be entitled to a jury trial in a separate action because any such right was waived by the defendants' failure to make a timely demand.

The federal rules provide that a party waives the right to a jury trial by failing to serve and file a jury demand within 10 days of service of the last pleading directed to such issue. FED. R. CIV. P. 38. Attempting to avoid waiver, the Mitchell defendants state that they made an oral motion for jury trial or evidentiary hearing during arguments before the magistrate judge. While we do not have the transcript to review, such a request would not substitute for the filing of a jury demand. Nor do we find persuasive the claim by Mitchell Corp. that its demand was timely because it was filed within 10 days of the magistrate judge's report and recommendation, which acknowledged its standing as an intervenor in the proceedings.

The supplementary proceedings in this case were initiated in August 1999, through Mitchell Corp.'s own motion to set aside the garnishment and USL's motion for determination of interests in the property of the judgment debtor. The Mitchell defendants clearly placed the issue of whether the security interest was superior to USL's judgment lien before the court for decision. Having submitted the issue for determination, the defendants may not wait six months before filing a demand for jury trial.

**AFFIRMED.**

1997). There can be no doubt in this case that despite not having taken physical possession of the property, the levy officer obtained constructive possession through the express grant of control over the sale and disposition of all of Mitchell Automotive's personal property. Given the debtor's further acknowledgment that its remaining personal property was not sufficient to satisfy the judgment of USL, the subsequent levy against the Clare property was not in violation of Mich. Comp. Laws Ann. § 600.6004.

Finally, the Mitchell defendants continue to argue that the promissory notes could not be subject to levy against personal property absent statutory authority. *See Jensen v. Oceana Circuit Judge*, 160 N.W. 620, 622 (Mich. 1916). Michigan law expressly provides, however, that execution may be made against all personal property of the judgment debtor, including "[b]ills and other evidences of debt." MICH. COMP. LAWS ANN. § 600.6017(2). More importantly, the challenge to USL's levy against the promissory notes was relevant to Mitchell Corp.'s claim that it had perfected its security interest before USL's judgment lien had attached. Having found that the security interest was extinguished by merger, it was not necessary for the district court to resolve the dispute concerning when that interest may have been perfected.

## C. Jury Demand

Finally, the Mitchell defendants argue that the district court erred by determining the competing interests in the judgment debtor's property without a jury trial. Although the district court did not address the demand for jury trial in its decision, we find any error to be harmless as a matter of law. Pursuant to Mich. Comp. Laws Ann. § 600.6113, proceedings supplementary to judgment are to be heard by the judge without a jury except as provided in Mich. Comp. Laws Ann. § 600.6128(3), which states that:

certain Asset Purchase Agreement dated April 22, 1998 shall be reduced by the sum of Six Million Dollars ($6,000,000).

Mitchell Automotive held both title to and the mortgage on the property.

On January 29, 1999, a consent judgment in favor of USL was entered against Mitchell Automotive, the Lamont Group, Inc., and Lamont Group Acquisition Corporation, jointly and severally, in the sum of $1,534,730.60, plus interest. USL conducted a creditor's examination, during which Helen Malik testified as the representative of Mitchell Automotive.

On May 26, 1999, USL levied on the personal property of Mitchell Automotive at its offices in Owosso, Michigan. The levy officer arrived with three trucks and several assistants to take possession of the personal property. In order to avoid the cost of transportation and storage, Mitchell Automotive, through counsel, agreed that the officer would have complete control over the sale of all of Mitchell Automotive's personal property; that Mitchell Automotive would not sell, move, or dispose of any of its personal property; and that its remaining personal property was not sufficient to satisfy the judgment. With that understanding, the levy officer did not take possession of the property.

On June 1, 1999, Mitchell Corp. advised USL that it intended to assert a priority interest in the assets of Mitchell Automotive pursuant to its security agreement dated May 27, 1998. On June 7, 1999, Mitchell Corp. claimed to have "peaceably repossessed" the remaining personal property of Mitchell Automotive pursuant to the security agreement. On June 10, 1999, USL filed a formal Notice of Levy against the Clare property.

In July 1999, USL served a periodic garnishment on the tenant that was paying to use the Clare facility. Mitchell Corp., claiming an interest in the Clare property, filed a motion to set aside the periodic garnishment. USL received

a total of $46,000 in garnished periodic lease payments before the lease was terminated. Then, on August 27, 1999, USL filed its motion for determination of interests in the property of Mitchell Automotive, arguing that Mitchell Corp.'s security interest was extinguished by merger, was not perfected, was fraudulent, and that the corporate form should be disregarded. The Mitchell defendants filed a joint response on September 16, 1999.

These post-judgment motions were referred to the magistrate judge who, after briefing and oral argument, issued his report and recommendation (R&R) on March 15, 2000. The magistrate judge concluded (1) that the mortgage and security interest in it should be deemed to have been extinguished in November 1998; and (2) that Mitchell Corp. had failed to perfect its security interest until after USL's garnishment and levy of personal property. On March 27, 2000, the Mitchell defendants jointly filed objections to the R&R and a separate demand for jury trial. USL responded to the objections.

The district court adopted the magistrate judge's report and recommendation, agreeing that merger extinguished Mitchell Corp.'s security interest and finding that the remaining objections would not alter the outcome. Accordingly, the court denied the motion to set aside garnishment, granted USL's motion for determination of interest in its favor, and sustained the garnishment of rents and levy on the Clare property. This appeal followed.

## II.

### A.  Merger

The general rule in Michigan is that when a holder of a real estate mortgage becomes the owner of the fee, the mortgage and fee are merged and the mortgage is extinguished. *Byerlein v. Shipp*, 451 N.W.2d 565, 569 (Mich. App. 1990). "'This rule is, however, subject to the exception that when it is to the interest of the mortgagee and is his intention to keep

Under Fed. R. Civ. P. 69(a), enforcement of a money judgment must be by writ of execution in accordance with the practice and procedures of the state in which the district court is located. USL obtained a writ of execution on May 21, 1999, in accordance with Michigan law. Execution may be made against real property of the judgment debtor "only after execution has been made against the personal property . . . and such personal property is insufficient to meet the sum of money and costs for which judgment was rendered." MICH. COMP. LAWS ANN. § 600.6004.

The Mitchell defendants argue for the first time on appeal that a second writ of execution was required to levy against the Clare property, and that the levy was not properly filed with the register of deeds as is required under Michigan Court Rule 3.103(F)(1). The record shows, however, that the writ of execution specifically authorized levy against both personal and real property, and that the notice of levy and writ were filed with the register of deeds on June 10, 1999.

Next, the Mitchell defendants argue that the levy against the Clare property was ineffective because the levy against the personal property was ineffective. We disagree. On May 26, 1999, the levy officer went to Mitchell Automotive's offices with the writ of execution to levy against its personal property. Based on the assurances of Mitchell Automotive and its counsel that the officer would have complete control over the sale and disposition of all personal property, whether it was located at its offices or at the Clare facility, the levy officer agreed to allow the property to remain on the premises in order to avoid the expense of transporting it elsewhere. Mitchell Automotive also expressly acknowledged that its remaining personal property was not sufficient to satisfy the judgment. Whenever an execution issues, the property levied against is "bound from the time of such levy." MICH. COMP. LAWS ANN. § 600.6012. The levy occurs when the property is seized, not when the return is made, and the seizure may be accomplished through actual or constructive possession. *See In re Fees of Court Officer*, 564 N.W.2d 509 (Mich. App.

the outcome of the merger issue. Mitchell Corp. also argues that the district court erred in its balancing of the equities by "lumping" Mitchell Corp. and Mitchell Automotive together without determining whether the corporate veil could be pierced. While the Mitchell defendants maintain that they observed their separate corporate formalities, it is also undisputed that the companies had their offices in the same building, used the same computers, shared or leased the same employees, and had the same officers. Significantly, William Mitchell, President, Chairman of the Board, and principal shareholder in both companies, incurred the debt to USL on behalf on Mitchell Automotive and was on both sides of the debt that arose between Mitchell Corp. and Mitchell Automotive.

Since USL had abandoned its effort to attempt to collect the debts of Mitchell Automotive from the assets of its parent, it was not necessary for the district court to determine whether the facts would justify piercing the corporate veil. Instead, the district court was called upon to weigh the equities between USL and Mitchell Corp. as secured creditors competing for the sole asset of the debtor. In weighing those equities, it was proper to consider the relationship between Mitchell Automotive and its respective creditors. We find no error in the district court's determination that the equities weighed against allowing Mitchell Automotive to rely on the exception to the merger rule to favor the debt owed to its parent company over USL's judgment lien.

## B. Levy

The district court held that with the extinguishment of Mitchell Corp.'s security interest, USL's June 10, 1999 levy on the Clare facility and its garnishment of rents paid on that facility would be sustained and enforced. Although the Mitchell defendants fault the district court for failing to state its reasons for upholding the levy against the Clare property, its claims of error are without merit.

the mortgage alive, there is no merger, *unless the rights of the mortgagor or third persons are affected thereby.*'" *Id.* (emphasis added) (quoting *Anderson v. Thompson*, 195 N.W. 689 (Mich. 1923)). *See also Vollmer v. Coenis*, 15 N.W.2d 654 (Mich. 1944). The district court found that despite the express intention to keep the mortgage alive, the exception would not be applied because of its effect on the rights of USL. The parties agree that the issue of merger presents questions of law, or mixed questions of law and fact, which we must review *de novo*.

Mitchell Automotive argues for the first time on appeal that there could be no merger because it did not hold both the title and the mortgage. Defendants' reliance on *Maxwell v. Hammond*, 208 N.W. 443 (Mich. 1926), to support this proposition is misplaced. In *Maxwell*, a mortgage on real property was granted to Austin Davis to secure several notes. Davis indorsed the notes and assigned the mortgage to a bank to secure his own debt. When the property was later deeded to Davis, the fee did not merge with the mortgage because Davis had previously transferred the mortgage to the bank. The estates did not vest in the same person. *Id*. at 444. In this case, however, Mitchell Automotive did not assign, transfer, or convey Lamont's mortgage to anyone. The continuing security interest granted to Mitchell Corp. in several categories of personal property did not transfer the mortgage from Mitchell Automotive.

The express intention to keep the Lamont mortgage alive was set forth in the quitclaim deed itself. As the district court explained, however, the exception to merger is in turn subject to equitable consideration of its effect on the rights of the mortgagor or a third party.

For example, there will be no merger "where to decree a merger would cause injustice or violate equitable principles, as is generally the case where the conflicting rights of a third person have intervened." 59 CJS Mortgages § 361. Likewise, the exception to the merger

doctrine will not be applied when doing so violates equitable principles. Thus, even where the parties express an interest in keeping a mortgage alive, courts will decline to apply the exception where the rights of third persons would otherwise be lost. *See Byerlein*, [451 N.W.2d at 569].

Applying these principles to the case at bar, the Court agrees with the Magistrate that the parties' expressed intent cannot be enforced in light of equitable considerations. Allowing an exception to [the] merger rule in this instance would do grave injustice. Such a finding would permit Defendant [Mitchell Automotive] to avoid paying an uncontested $1.5 million dollar debt to [USL] in favor of its parent corporation, Defendant [Mitchell Corp.]. The fact that these two corporations share the same office space, computers, employees, and are run by the same President who originally incurred the debt to [USL] only highlights the inequity of applying the exception.

Further, the Court finds its conclusion to be most consistent with the purpose of the exception to the merger rule. As the Michigan courts have explained, the purpose of declining to find a merger is to allow a mortgagee/lender to protect itself from the claims of junior lienholders of the mortgagor/borrower. Whe[n] real estate is involved, the lender will often purchase the property to prevent it from being sold at below market value. In such circumstances "it would be absurd for a mortgagee . . . to destroy her senior lien, which would only benefit junior lienholders, and thereby preclude collection of the debt owed her." *Byerlein*, [451 N.W.2d at 570]. In the present case, [Mitchell Automotive] is not in the position of a mortgagee trying to protect itself from junior lienholders of the Lamont Defendants; it is attempting to protect itself from having to pay a debt it acknowledges owing to Plaintiff.

We agree that equitable considerations preclude Mitchell Automotive from avoiding merger when the effect is not to protect its own interests from the creditors of the Lamont Group (the mortgagor), but rather to prefer the debt owed to its parent corporation over the debt owed to USL as a third party.

Mitchell Corp. continues to rely on the cases of *Union Bank & Trust Co. v. Farmwald Development Corp.*, 450 N.W.2d 274 (Mich. App. 1989), and *Clark v. Federal Land Bank of St. Paul*, 423 N.W.2d 220 (Mich. App. 1987), to argue that USL is not a "third party" entitled to equitable protection. While the intention to avoid merger was given effect in those cases, the rationale in each case was to protect the first mortgagee against claims of another mortgagee or creditor of the mortgagor. This rationale has no application here since Mitchell Automotive, the mortgagee, is not seeking protection against junior claims of Lamont's creditors; but is itself the debtor seeking to avoid collection of the judgment entered against it.

The district court also observed that in both *Farmwald* and *Clark* it was significant that the junior lienholder obtained its interest with the knowledge of the superior interest of the first mortgagee. In fact, both the judgment lien at issue in *Clark* and the second mortgage in *Farmwald* were expressly made subject to the first mortgage. In contrast, even if these cases were applicable, USL's judgment was not expressly made subject to Mitchell Corp.'s security interest in the personal property, promissory notes, or the Lamont mortgage. Although Mitchell Corp. asserted that it had a superior claim to the mortgage before USL levied against the real property, notice of this claim is not akin to the lienholders' express knowledge of the first mortgagee's superior rights in *Farmwald* and *Clark*.

Next, Mitchell Corp. claims its rights should be protected as a "third party" because it is the entity "most affected by merger or non-merger." In fact, USL is equally affected by